OPINION OF THE COURT
John J. Reilly, J.
The defendant Dennis Marshall arrested on a charge of robbery in the first degree involving a stabbing on December 23, 1980, of an elderly Peekskill woman contends that his oral and written confessions to the Peekskill police, made after he received his Miranda warnings (Miranda v Arizona, 384 US 436) in the absence of counsel representing him on an earlier unrelated crime must be suppressed.
The prosecution contends that while the interrogating officer knew vaguely of defendant’s prior arrest he did not know when the arrest was made or the nature of the crime with the result that the knowledge of the interrogating officer was insufficient to support an inference that he should have known that the defendant was represented by counsel on the earlier crime. Further, it is contended that because the defendant was sentenced on the earlier crime approximately five months before he made the confessions, as a matter of law (CPL 1.20, subd 16, par [c]) the prior representation by counsel was terminated. The court rejects each of the People’s contentions. Based on findings of *153 fact as set forth hereafter, the court suppresses the confessions.
For purposes of clarity, the findings of fact are arranged in chronological order, as set forth hereafter.
On October 23, 1980, the Peekskill police arrested the defendant on a charge of criminal possession of a forged instrument in the second degree.
On October 27, 1980, a Legal Aid Society lawyer was assigned and represented the defendant.
On December 15, 1980, in the Peekskill City Court, the defendant pleaded guilty as charged and received a one-year conditional discharge sentence on condition (1) that he make restitution (which was immediately accomplished) and (2) he pay a fine of $100.
On December 23, 1980, an elderly Peekskill woman was robbed and stabbed.
On December 24, 1980, Peekskill Detective Mark O’Buck found a knife involved in the robbery with smudged fingerprints on it. In an anonymous phone call, Detective O’Buck was informed that the perpetrator was a dark man wearing a three-quarter grey coat.
On December 29, 1980, Detective O’Buck observed the defendant Dennis Marshall walking in a three-quarter grey coat and began to investigate him as a suspect.
On January 7, 1981, Detective O’Buck examined the defendant’s Peekskill arrest file. He extracted a fingerprint card related to the earlier arrest for possession of a forged instrument in the second degree and had it compared with palm prints taken from the suspect in connection with the later robbery and stabbing of the Peekskill elderly woman.
On January 15, 1981, at the Peekskill City Court, the assigned Legal Aid attorney appeared and answered the calendar related to defendant’s earlier plea and sentence for possession of a forged instrument in the second degree. The defendant failed to appear. A Bench warrant was issued and the matter was adjourned until January 26, 1981.
*154 On January 26, 1981, the defendant’s attorney again appeared at calendar call; defendant failed to appear, another Bench warrant was issued, and the case was adjourned until February 9, 1981.
On February 10,1981, Peekskill Detective O’Buck at his home was informed that the defendant was arrested at the Peekskill police station on a charge of attempted burglary. Detective O’Buck acknowledged that while he was aware that defendant Marshall had been arrested some months earlier on an unrelated charge, he did not know when and what for. At the Peekskill police station, Detective O’Buck read the defendant his Miranda warnings. Thereafter on being questioned, the defendant made oral and written confessions of his part in the robbery and stabbing of the elderly woman on December 23, 1980.
Subsequently, on February 23, March 10, and March 30, 1981, the defendant’s Legal Aid attorney continued to appear and represent the defendant on the earlier unrelated conviction of possession of a forged instrument in the second degree.
CONCLUSIONS OF LAW
The facts of the instant case come clearly within the rule of law announced by the Court of Appeals in its recent pronouncements in the companion cases of People v Servidio (54 NY2d 951) and People v Smith (54 NY2d 954).
In Servidio (supra) unlike the present case, the interrogating officer was totally unaware of any pending unrelated charges. In a unanimous Per Curiam memorandum, the Court of Appeals stated (pp 953-954): “Unlike the situation in People v Smith (54 NY2d 954 [decided herewith]), there was, therefore, no basis for inferring knowledge of the prior representation from knowledge that there were unrelated charges pending. Nor in view of the minor nature of the charge (unauthorized use of a motor vehicle and resisting arrest) can it be said that the police deliberately overlooked the obvious or insulated the interrogating officers from actual knowledge of the pending unrelated charges, even though they were pending within the same county and presumably the same department, and were but two and one-half months old (cf. People v *155 Kazmarick, 52 NY2d 323; see People v Bartolomeo, 53 NY2d 225).”
In Bartolomeo (53 NY2d 225, 232), Judge Jones, wrote for the majority opinion where with knowledge of the prior arrest, the police failed to make inquiry as follows: “Having failed to make such inquiry, the officers were chargeable with what such an inquiry would have disclosed — namely, that defendant did have an attorney acting on his behalf. With such knowledge they were foreclosed either from questioning defendant or from accepting his waiver of counsel’s assistance unless his attorney was then present. It was therefore error to deny suppression of testimony as to the statements made by defendant at the Suffolk County police station on June 5,1978. For this reason, defendant’s conviction must be vacated.”
In Servidio (supra, pp 953-954) Judge Gabrielli (concurring) wrote for the unanimous court as follows: “Tn short, we think that in accordance with the precept stated in People v Pinzon (44 NY2d 458, 464, supra), we should focus on whether the police actually had knowledge of the representation of the defendant by counsel — “[w]hat is required must always be considered in light of what is practical under the circumstances”. The balance between the rights of the individual and the responsibilities of the State will be fairly maintained if actual knowledge, not constructive knowledge, is the ingredient of the rule forbidding the interrogation of a suspect when he is represented by counsel on unrelated charges unknown to the police. This does not mean that the police may act by subterfuge to conceal such knowledge, or to overlook the obvious. Equally, it means that the police undertaking the questioning must be possessed with the knowledge of the prior representation’.”
In the instant case, the fact that Detective O’Buck actually looked at defendant’s fingerprint card and failed to see what was plainly to be seen thereon, namely that it was made based upon defendant’s arrest for the crime of possession of a forged instrument in the second degree, is an example of how a policeman can deliberately overlook the obvious and insulate himself from actual knowledge of a pending unrelated charge. (People v Servidio, supra.)
*156 In the instant case, the situation was such that the court based upon Officer O’Buck’s knowledge of the fingerprint card and its purpose for existence must infer knowledge that the officer knew that the defendant had counsel represent him on the earlier charge. In actuality, the officer testified in effect that had he been aware that defendant was arrested for forgery in the second degree, he would have known that the defendant had an attorney representing him on it. Thus, the court finds that there exists a basis for inferring from O’Buck’s knowledge that the defendant had been arrested five months earlier on a felony, knowledge that the defendant had counsel represent him on the earlier charge at the time Detective O’Buck interrogated him. (People v Smith, supra; People v Servidio, supra.)
In disposing of the second issue, namely the People’s contention that because the defendant was sentenced on December 15,1980, the defendant’s right to representation by counsel on the earlier crime was automatically (mechanically) terminated, the court rejects such contention and finds it utterly without merit.
The contention was considered by Justice Hopkins, speaking for a unanimous Appellate Division, in People v Servidio (77 AD2d 191, 196): “Actually the guiding principle in these, and other cases involving the right to counsel is that the defendant’s right should not be ‘dependent upon “mechanical” and “arbitrary” requirements’ (People v Arthur, supra, at p 329; People v Gunner, supra, at p 232; see, also, People v Ramos, 40 NY2d 610; People v Hobson, supra, at p 483; People v Singer, supra). What is required must always be considered in light of what is practical under the circumstances (see, e.g., People v Gunner, supra, at p 232).”
Both the Appellate Division and the Court of Appeals unanimously agreed that the focus on whether the police actually had knowledge of the representation of the defendant’s counsel is not a mechanical rule but must be determined on what is required in the light of what is practical under the circumstances of each individual case. (People v Servidio, 77 AD2d 191, 197, affd 54 NY2d 951, 953, supra.)
The important factor in the instant case was the police awareness of an attorney’s presence on defendant’s behalf *157 rather than the precise terms of the retainer or the appointment. (People v Marrero, 51 NY2d 56.) It has been held that ev$n if, because of the limited and unusual arrangement the attorney had made with the defendant, the representation may actually have terminated prior to questioning is an immaterial factor where there is no evidence that the interrogating police officer was aware of that specific arrangement. (People v Servidio, 77 AD2d 191, 194, supra.)
In the case before the court, Detective O’Buck simply knew the defendant five months earlier had been arrested on a charge of criminal possession of a forged instrument in the second degree. As the interrogating officer, he was completely unaware of how long or under what circumstances the Legal Aid attorney was representing the defendant on the earlier charge. It was the awareness of Detective O’Buck that the earlier charge indicated to him that the defendant would be represented by counsel that defeats any contention that such representation would automatically terminate upon defendant being sentenced.
In the instant case, the court finds that the defendant was actually represented on the earlier charge during the time that Detective O’Buck interrogated him and for approximately one month thereafter.
Accordingly, the defendant’s motion to suppress the oral and written confessions is granted for the failure to have counsel actually present during O’Buck’s interrogation.